UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ESTATE OF KRISTY MARIE PARKER, | : | Case No. 3:17-cv-307 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| CLARK COUNTY, OHIO, et al., | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANTS CLARK COUNTY, OHIO, CLARK COUNTY SHERIFF'S OFFICE AND SHERIFF DEBORAH BURCHETT'S MOTION FOR SUMMARY JUDGMENT (DOC. 21)**

---

This case is before the Court on the Motion for Summary Judgment (Doc. 21) filed by Defendants Clark County, Ohio, Clark County Sheriff's Office and Sheriff Deborah Burchett (collectively, "Defendants"). Plaintiff, the Estate of Kristy Marie Parker (the "Estate"), alleges that Defendants failed to provide adequate protections to Ms. Parker, who died as a result of an opioid overdose at the Clark County, Ohio Jail on January 20, 2016. (Doc. 6 at ¶ 1.) Defendants argue that they are entitled to summary judgment on all of the Estate's claims on several grounds, including immunity and that the Estate does not allege violation of any of Ms. Parker's constitutional rights. The Estate filed a memorandum in opposition to the Motion for Summary Judgment (Doc. 22), in response to which Defendants filed a Reply (Doc. 23). This matter is ripe for review. For the reasons below, the Court **GRANTS** the Motion for Summary Judgment (Doc. 21) in its entirety and **DISMISSES** all of the Estate's claims. This case is **TERMINATED** on the Court's docket.

## I. BACKGROUND

### A. Factual Background

The Estate does not cite any evidence in its Opposition to the Motion for Summary Judgment. It is nearly impossible to overcome a motion for summary judgment without presenting evidence because the opposing party—typically, as here, the plaintiff—carries the burden of identifying genuine issues of material fact that must be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Instead of citing evidence, the Estate refers to allegations in the unverified Amended Complaint. Unverified allegations are not evidence and cannot create a genuine issue as to any fact.

Since the Estate has not cited any evidence, the Court accepts the recitation of facts in Defendants' Motion for Summary Judgment as undisputed. *See* Fed. R. Civ. P. 56(e)(2) (court may consider facts undisputed for purposes of a motion where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact").

#### 1. Kristy Parker Overdoses at the Clark County Jail

On January 20, 2016 at approximately 11:45 p.m., inmate Kristy Parker was found unresponsive in her cell by third shift deputies William Crump and Vickie Newsom. Deputies began life saving measures until the arrival of Springfield Medics who continued life saving measures with no success. Ms. Parker was pronounced dead at the Clark County Jail. An autopsy determined that Ms. Parker died due to an overdose of Heroin.

The day after Ms. Parker's death (January 21, 2016), Deputies Gray and Hiles found a suicide note in inmate Marcia Galvan's cell in which inmate Galvan stated that "I must say it has been the longest 10 days of my life and I would rather be executed than to be separated for a certain

amount of day just because if I am executed I nothing to worry about if I'm just doing time then either way there holds a future with the too of y'all in it as well." Due to the suicide note, Deputies Gray and Hiles were going to switch inmate Marcia Galvan into a suicide watch smock.

As deputies Gray and Hiles observed inmate Galvan disrobe prior to a shower, inmate Galvan grabbed her left breast trying to keep something from falling out. When inmate Galvan took her left arm out of the bra, a small white yellow line fell out onto the floor. Inmate Galvan stated it was a straw. Inmate Galvan continued to hold her left breast like there was something else in her bra. The deputies then observed inmate Galvan place a small baggie with a gray like substance into her left hand. After some resistance, the deputies confiscated the small baggie. Inmate Galvan admitted that the substance in the baggie was heroin and stated that she smuggled the heroin baggie into the jail. More specifically, inmate Galvan stated that "she placed the heroin in 4 small baggies with Oxy [Oxycontin] and Xanax." Galvan "placed the small baggie between her legs and brought it in." Deputy Laurie Beard was showering her and another inmate and was not paying attention. Inmate Galvan later stated to Detective Melchi that she traded the drugs with Kristy Parker for commissary. Inmate Galvan was later convicted for involuntary manslaughter regarding the death of inmate Kristy Parker.

### 2. Clark County Conducts Internal Investigation

Lieutenant Barnhart and Sergeant Elliott were ordered to conduct an internal investigation into the in-custody death of Kristy Parker. Deputy Beard was interviewed on March 8, 2016. Deputy Beard stated that she remembered showering Inmate Galvin during her booking on January 19, 2016. Deputy Beard stated that she was at the end of a busy shift. She stated that she took two female inmates into the shower at the same time for the required showers. She stated that she

observed inmate Galvan acting odd while in the shower as if she did not want to spread her legs. In addition, Deputy Beard noticed that inmate Galvan would not open her legs while trying to put her pants on. Deputy Beard did not take any action to address this unusual behavior other than to tell inmate Galvan to "just put the pants on." Deputy Beard also failed to remove the wire from inmate Galvan's bra. Deputy Beard advised that she "was in a hurry" on this particular date.

Deputy Beard was a seasoned deputy with nearly 10 years of experience. When policies and procedures are updated, deputies receive a copy of the policies and procedures. In 2014, Deputy Beard acknowledged receiving a copy of the Clark County Sheriff's Office's policies and procedures. Nonetheless, Deputy Beard failed to follow several Clark County Jail policies, including, but not limited to: failure to follow Clark County's inmate search policy. Deputy Beard was scheduled for a pre-disciplinary hearing on May 3, 2016. Deputy Beard resigned before the pre-disciplinary hearing could be completed.

Having determined how Inmate Galvan was able to sneak narcotics into the jail, the Sheriff's Office also reviewed whether deputies were conducting appropriate observation checks and headcounts as required by policy. Deputies Jake Shaw and Diane Gray were assigned to work the third floor of the jail (where Kristy Parker was housed) from 3:00 p.m. to 11:00 p.m. on January 20, 2016. The Sheriff's Office investigated whether deputies Shaw and Gray properly documented their hourly observation checks and their head count.

A review of jail video showed Deputy Shaw walking from pod to pod observing the inmates on all pods; however, the electronic log shows a 2 ½ hour lapse in checks during the mid-evening from 5:24 p.m. to 7:54 p.m. When questioned, Deputy Shaw stated that he may have forgotten to utilize a data collection tool that would have electronically logged where Deputy Shaw

4

was.

Deputy Gray stated that she documented a final head count, but did not complete it. Deputy Gray stated that she did not know why she logged a head count when she did not do one. Deputy Gray stated that inmate Kristy Parker was locked down in her cell after medication pass and was not physically checked after medication pass. Deputy Gray stated she failed to utilize the electronic logging system. It should be noted that jail records show that inmate Kristy Parker was certainly alive at 9:00 p.m. on January 20, 2016 because Ms. Parker appeared for evening medication pass and received her prescribed medication.

Deputy Gray and Deputy Shaw were disciplined for failing to properly document their observation checks and head count. Deputy Gray was suspended for one day. Deputy Shaw was given a written reprimand.

### B. Procedural Background

On September 1, 2017, the Estate brought this action against Defendants Clark County, Ohio, Clark County Sheriff's Department, Clark County Sheriff Deborah Burchett, and unnamed Deputies of Clark County Sheriff's Department. The Estate amended the Complaint on September 6, 2017 to reflect the name of the newly-elected Clark County Sheriff Burchett. (Doc. 6.) The Estate asserts four causes of action in the Amended Complaint: (1) violation of Ms. Parker's constitutional rights under 42 U.S.C. § 1983, (2) negligence for failing to protect Ms. Parker from harm while in the care and custody of the Clark County Jail, (3) loss of consortium, and (4) loss of financial support. The Estate brings each of these claims against all of the Defendants.

On November 27, 2017, Defendants filed an Answer to the Amended Complaint and the

case proceeded to discovery. (Doc. 8.) Discovery closed on September 10, 2018. On October 12, 2018, Defendants filed the Motion for Summary Judgment now before the Court.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its

position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A *Wright & Miller, Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.* However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091 (1990). Thus, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

**III. ANALYSIS**

**A. Whether Clark County Sheriff's Office is Capable of Being Sued**

Defendants' first argument is that sheriffs' offices and police departments are not bodies politic and therefore are not persons within the meaning of § 1983. (Doc. 69 at 2 (citing *Petty v.*

*Cnty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991); *Batchik v. Summit County Sheriff's Dept.*, 1989 Ohio App. LEXIS 877, 1989 WL 26084, at *1 (Ohio Ct. App. Mar. 15, 1989)).) Ohio courts have consistently held that a sheriff's office or department is not a legal entity subject to suit, but that the county may be a proper defendant subject to the immunities set forth in Chapter 2744 of the Ohio Revised Code. *See*, *e.g.*, *Smith v. Kelly*, 2012-Ohio-2547, ¶ 39, 2012 Ohio App. LEXIS 2235, *21, 2012 WL 2061947 (holding Clark County Sheriff's Office "is not a legal entity subject to suit"); *Ciganik v. Kaley*, 2004-Ohio-6029, ¶ 40, 2004 Ohio App. LEXIS 5447, *20 ("A sheriff's department is not a legal entity subject to suit."). Defendants thus conclude that Clark County Sheriff's Office is not subject to suit under § 1983 or the Estate's state law claims. Defendants are correct—as their authority plainly holds.

In response, the Estate essentially concedes that suits against a sheriff's office are not viable, but argues that a claim against a sheriff may proceed. Arguing that the claim against the Sheriff is viable does not save the claim against the Sheriff's Office. The Estate also suggests that the Sheriff's Office is liable under a theory of respondeat superior, but fails to explain how this theory squares with Defendants' caselaw. (*Cf.* Doc. 22 at 5-6 and *Ashcroft v. Iqbal*, 556 U.S.662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*").) Defendants are entitled to summary judgment on the Estate's claims against the Clark County Sheriff's Office.

**B. Whether the Estate Can State a Claim Against Sheriff Deborah Burchett**

Defendants argue that all of the claims against Sheriff Burchett should be dismissed because she did not become the Clark County Sheriff until a year after the events alleged in the

8

Amended Complaint.

Under § 1983, public officials may be sued in their individual or official capacities. Individual or personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). The Amended Complaint does not state whether the Estate is suing Sheriff Burchett in her official or personal capacity. However, both the Sheriff's Office and Clark County are separately named as Defendants. Thus, to the extent that Sheriff Burchett herself is a Defendant, it must be in her individual capacity.

When suing a defendant in his or her individual capacity, a plaintiff must plead and prove the defendant's personal involvement in causing the alleged injury. *Carrion v. Wilkinson*, 309 F.Supp.2d 1007, 1013-14 (N.D. Ohio 2004) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)); *see Palmer v. Lane*, 22 Fed. App'x 532, 533 (6th Cir. 2001). The facts giving rise to the Amended Complaint occurred on January 19-20, 2016. (Doc. 6 at PageID # 31-32). Sheriff Burchett did not become Clark County Sheriff until January of 2017—a year after the events alleged in the Amended Complaint. (Doc. 21-1 at ¶ 3). Sheriff Burchett was not employed by Clark County in 2016, and had no involvement in or knowledge of any incident involving Kristy Marie Parker. (*Id*. at ¶¶ 4, 6, and 7). The Estate has not come forward with evidence creating an issue as to these facts. Sheriff Burchett is entitled to summary judgment on the § 1983 claim.

Defendants argue Sheriff Burchett cannot be held liable under the state law claims because there is no evidence that she acted "with malicious purpose, in bad faith, or in a wanton or reckless

9

manner." (Doc. 21 at 3-4 (quoting Ohio Rev. Code § 2744.03(A)(6)(b)).) Section 2744.03 enumerates the tort liability of political subdivision employees and provides that employees are "immune from liability for acts or omissions made in connection with a governmental or proprietary function unless the acts and omissions were [(a)] manifestly outside the scope of employment or official responsibilities; [(b)] made with malicious purpose, in bad faith, or in a wanton reckless manner; or [(c)] a section of the Revised Code expressly imposes liability." *Cotton v. McFaul*, 1993 Ohio App. LEXIS 1956, at *2 (Ohio Ct. App. 8th Dist. 1993) (citing Ohio Rev. Code § 2744.03(A)(6)). In response, the Estate cites only allegations, not any admissible evidence. (Doc. 22 at 11.) Sheriff Burchett is therefore entitled to summary judgment on the Estate's state law claims.

### C. Whether the Estate's State Law Claims Are Barred by Statutory Immunity

Defendants contend that Clark County, Ohio is statutorily immune from the Estate's state law claims. Under the Ohio Revised Code, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). Exceptions to this general grant of immunity appear in Ohio Rev. Code § 2744.02(B)(1)-(5).

Clark County is a political subdivision, *see* Ohio Rev. Code 2744.01(F) and the "operation of jails" is a governmental function. *See id.* at 2744.01(C)(2)(h). Clark County is therefore immune from a civil suit for damages under 2744.02(A)(1), unless one of the exceptions under 2744.02(B) apply. Defendants argue that none of those exceptions apply and Clark County is entitled to summary judgment on the Estate's state law claims. (Doc. 21 at 5 (citing *Carmichael*

*v. City of Cleveland*, Case No. 1:11-cv-220, 2012 U.S. Dist. LEXIS 60619 at *50 (N.D. Ohio, May 1, 2012); *Hicks v. Hodge*, Case No. 1:07-cv-483, 2008 U.S. Dist. LEXIS 73415 at *27-29 (S.D. Ohio, Sept. 25, 2008); *Smeal v. Alexander*, Case No. 5:06-cv-2109, 2006 U.S. Dist. LEXIS 86833 at *26-28 (N.D. Ohio, November 30, 2006)).

The Estate's counter-argument widely misses the mark by relying on the analysis of Ohio Revised Code 2744.09(B) in *Sampson v. Cuyahoga Metropolitan Housing Authority*, 2010-Ohio-3415, 188 Ohio App. 3d 250, 935 N.E.2d 98. In *Sampson*, a county housing authority employee sued the housing authority for allegedly wrongly accusing him of theft. The housing authority claimed immunity from suit as a political subdivision under Ohio Revised Code 2744.02 (discussed above). The employee argued that 2744.02 was inapplicable pursuant to an express exception in Ohio Revised Code 2744.09(B), "which states that Chapter 2744 shall not apply to '[c]ivil actions by an employee * * * against his political subdivision relative to any matter that *arises out of the employment* relationship between the employee and the political subdivision.'" *Sampson*, 2010-Ohio-3415 at ¶ 23 (emphasis added in *Sampson*). The Ohio court of appeals found that all of the employee's claims arose out of his employment and therefore the housing authority was not entitled to immunity.

This case does not involve a claim by a political subdivision employee against the political subdivision for which she works. Accordingly, *Sampson* and the exception to statutory immunity set forth in 2744.09(B) are inapposite. Clark County is entitled to summary judgment on the Estate's state law claims.

### D. Whether the Estate's § 1983 Claim Fails under *Monell*

The only claim left to address is the Estate's § 1983 claim against Clark County. The

11

Estate alleges that Clark County is liable under § 1983 for violation of Kristy Marie Parker's constitutional rights by failing to adequately protect her health while she was in custody at the Clark County Jail. The Estate alleges that, as a result of this violation, Ms. Parker died from an opioid overdose while still in custody on January 20, 2016.

To state a claim under § 1983, "a plaintiff need only establish that '(1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory.'" *Ziegler v. Aukerman*, 512 F.3d 777, 782 (6th Cir. 2008) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir.2006)). Municipalities, however, are not vicariously liable in § 1983 actions "merely because they employ someone who has committed a constitutional violation." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 994–95 (6th Cir. 2017) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipality or county is liable only if the injury is caused by a custom or policy, or if its failure to train employees amounts to deliberate indifference to constitutional rights. *Id.* In a deliberate-indifference case, the violated right must be clearly established because a municipality "cannot deliberately shirk a constitutional duty unless that duty is clear." *Id.*

Defendants argue that the Estate cannot establish that there was any underlying violation of Ms. Parker's constitutional rights and that, even if there were such a violation, the Estate cannot establish a "direct causal link between municipal policy or custom and the alleged constitutional deprivation." (Doc. 21 at 15 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Defendants begin their first argument by recognizing that the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." (Doc.

12

21 at 11 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).) To prove a claim based on the failure to take such measures, an inmate must prove that the she was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. In addition, the inmate must prove that prison officials acted with "'deliberate indifference' to inmate health and safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). "At the summary judgment stage, the plaintiff must 'make a showing sufficient to establish the existence' of deliberate indifference, see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), because the plaintiff bears 'the onerous burden of proving the official's subjective knowledge' at trial." *Hinneburg v. Miron*, 676 Fed. App'x. 483, 486 (6th Cir. 2017) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). To do so, the plaintiff must establish facts from which a reasonable juror could conclude that the official: (1) "subjectively perceived facts from which to infer substantial risk to the prisoner," (2) "that he did in fact draw the inference," and (3) "that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

Defendants point out the even the Amended Complaint, which is not evidence, alleges only that unnamed prison officials were negligent. Negligence does not meet the deliberate indifference standard. In addition, the only evidence in the record—all of which has been submitted by Defendants—does not show, or could not be reasonably found to show, that Deputy Beard knew that Ms. Galvan had heroin or other drugs on her person. Nor is there any evidence that Deputy Beard knew of Ms. Parker's risk of ingesting the drugs that Ms. Galvan provided her.

13

*See Watkins v. City of Battle Creek*, 273 F.3d 686 (6th Cir. 2001) (affirming summary judgment for defendant where "the evidence was not sufficient to lead a rational trier of fact to conclude that the officers or jailers knew [the inmate plaintiff] needed medical attention for swallowing drugs").

As mentioned, the Estate has failed to present any evidence in opposition to Defendants' Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(1)(A)&(B) (party opposing summary judgment must support assertions by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence of presence of a genuine dispute") *see also Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993) (nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment"). The Estate also fails to show how a reasonable juror could find in its favor based on the evidence submitted by Defendants. *Id.* The evidence in the record cannot reasonably support an inference that Ms. Parker was deprived of a federal right, constitutional or statutory. Clark County is therefore entitled to summary judgment on the Estate's § 1983 claim.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion for Summary Judgment (Doc. 21) in its entirety and **TERMINATES** this case on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, March 22, 2019.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

14